SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

Index No. EF000950-2025
S&S File: N496538

-------------------------------------------------------------------X

CAPITAL ONE, N.A.

PLAINTIFF,

AGAINST  -

**AFFIRMATION IN
OPPOSITION**

SANDRA D BELL

DEFENDANT.

-------------------------------------------------------------------X

Michael J Brennan, Esq., hereby subscribes and affirms that:

1.      I am an associate attorney with Selip & Stylianou, LLP, attorneys for Capital One,

N.A. (hereafter, "Plaintiff"), and as such, am fully familiar with the facts and circumstances of

this matter, based upon my review of the file maintained by this office, which contents I believe

to be true and accurate.

2.      This Affirmation and annexed exhibits are submitted in Opposition to the Motion

of SANDRA D BELL (hereinafter, "Defendant") returnable April 25, 2025 which seeks to

Compel Arbitration pursuant to the Federal Arbitration Act (9 U.S.C. Sec. 1 -16), Stay the Case

while Arbitration is conducted, and provide any further relief the Court find appropriate. Further,

accompanying Defendant's Motion is her Answer to the Summons, in which she raises what she

asserts to be Affirmative Defenses.

## PROCEDURAL HISTORY

3.      This action was commenced by Plaintiff in an effort to collect monies owed by Defendant as further detailed in the Complaint.  Copies of the Summons and Complaint are annexed hereto as **Exhibit "A"**.

4.      Service was effectuated upon Defendant in strict compliance with <u>CPLR 308(2)</u> on March 11, 2025 at her then address of record, namely, 29 S. Aspen Rd., Middletown, N.Y. 10940. A copy of the Affidavit of Service is annexed hereto as **Exhibit "B"**.  Pursuant to <u>CPLR 3215(g)</u>, copies of the Summons and Complaint were also mailed to Defendant at the aforementioned address on March 14, 2025. Issue was joined upon the filing of Defendant's Answer on March 31, 2025.

5.      Accompanying Defendant's instant Motion to Compel Arbitration is her Answer to the Complaint  in which she repeats her Demand to Compel Arbitration as well as raises what she asserts to be Affirmative Defenses. Plaintiff respectfully submits that Defendant's Motion be denied and that the Defenses that she raises in her Answer are without merit.


### Legal Arguments

#### *Defendant's Motion to Compel Arbitration and Stay the Proceedings Is Without Merit*

6.      To begin with, Plaintiff refers the Court to the annexed Capital One Customer Agreement, annexed hereto as **Exhibit "C,"** which confirms that Defendant's Account is not subject to an Arbitration Clause. Consequently, Defendant's Motion to Compel Arbitration and Stay Arbitration must be denied.

*The Affirmative Defenses in Her Accompanying Answer Are Also Without*

*Merit*

7.    Defendant has failed to set forth any meritorious Affirmative Defenses in her Answer.

8.    Defendant begins her Answer with a General Denial and then specifically denies the following: that a valid or enforceable contract exists between the parties; that Plaintiff has Standing to bring this Action; that Plaintiff is authorized to collect any debt related to her Account; and, that she owes any amount to Plaintiff. She also maintains that Plaintiff has not sufficiently documented its lawful ownership of her Account or her debts and charges.

9.    Initially, Defendant asserts that Selip and Stylianou appears to be a party to this lawsuit as "the third party debt collector," thus creating an ambiguity requiring intervention of an arbitrator. This, however, is nothing more than an allegation unsupported by any credible, factual or documentary evidence. It is well settled that defenses, which merely plead conclusions of law without supporting facts are insufficient, and are therefore fatally deficient. <u>Bentivegna v. Mennen Oil Co., Inc.</u>, 126 A.D.2d 506, 510 N.Y.S.2d 626 (2nd Dept. 1986). Mere conclusions, expressions of hope, or unsubstantiated allegations or assertions are insufficient to defeat a motion for summary judgment. <u>Gilbert Frank Corp. v. Federal Ins. Co.</u>, 70 N.Y.2d 966, 525 N.Y.S.2d 793 (1988). The fact is that the parties to this Action are unambiguously stated in the Summons and Complaint (**Exhibit "A"**), in Plaintiff`s instant Affirmation, and in Defendant`s own Motion and Answer. Moreover, Selip and Stylianou, L.L.P. is not a "third party debt collector." Rather, it is Plaintiff`s Attorney of Record in this matter -- nothing more, nothing less.

10.    As to Defendant`s denial of Plaintiff`s Standing in this Action, this Defense is unsupported in fact or in law. First of all, Plaintiff is the original creditor as defined in

N.Y.C.C.R. Sec. 105(q-1) and, therefore, owns her Account. Moreover, "[T]he plaintiff [has] established, prima facie, its standing to prosecute this action. Due proof was adduced that the plaintiff was [and still is] the original lender." Bank of Am., N.A. v O'Donnell, 47 Misc. 3d 1210(A), 2015 N.Y. Misc. LEXIS 1185, 2015 NY Slip Op 50545(U), 16 N.Y.S.3d 791 (Sup. Ct., N.Y Co. 2015). Next, Plaintiff is a National Association Bank; and, pursuant to the National Bank Act (NBA), 12 U. S. C. §1 et seq. as well as regulations promulgated thereunder by the Office of the Comptroller of the Currency (see §§24, 93a, 371[a]), is authorized to conduct business in the State of New York. Plaintiff is also a party to the Agreement (**Exhibit "C"**) along with Defendant and therefore has Standing. Annexed hereto are copies of correspondence mailed to Defendant by Plaintiff - Monthly Statements, the Last Activity Statement, the Default Confirmation Statement, the Charge-Off Statement, (**Exhibit "D"**) and the Pre-lawsuit ("*Dunning*") letter (**Exhibit "E"**) as further documentation of Defendant's ownership of Defendant's Account. Thus, "[T]he plaintiff [has] established, prima facie, its standing to prosecute this action. Due proof was adduced that the plaintiff was [and still is] the original lender." Bank of Am., N.A. v O'Donnell, 47 Misc. 3d 1210(A), 2015 N.Y. Misc. LEXIS 1185, 2015 NY Slip Op 50545(U), 16 N.Y.S.3d 791 (Sup. Ct., N.Y Co. 2015). As such, this Defense must fail.

### *Neither the Truth in Lending Act or the Fair Credit Billing Act was Violated*

11.      Defendant argues that the filing of this lawsuit without having properly resolved a billing dispute is a violation of both the Truth in Lending Act 15 U.S.C. Sec. 1666 and the Fair Credit Billing Act, ("particularly under Reg Z,") 12 C.F.R .Sec. 1026.13. In doing so, she relies upon correspondence addressed to this Firm, dated January 24, 2025, seeking Debt Validation Pursuant to the Fair Debt Collection Practices Act (see *Defendant's Exhibit A*). Additionally, she

offers a handwritten form letter addressed to Plaintiff, dated August 30, 2024, requesting that it cease all collection activities since "the debt associated with [her] account number is currently pending in a legal dispute." (see *Defendant`s Exhibit B*).

12.　　Regarding Defendant`s January 24, 2025 correspondence addressed to this Firm, upon information and belief, this Firm was never in receipt of it. In fact, this Firm`s first notice of Defendant`s Dispute of her Debt and Request for Validation occurred on April 8, 2025 when it received Defendant`s instant Motion to Compel and her Answer, the same date, incidentally, that Defendant filed these documents with this Court (see *Defendant`s Exhibit A*).

13.　　More notably, in her August 30, 2024 correspondence addressed to Plaintiff (which again, did not come to this Firm`s attention until April 8 of this year upon the receipt of her Motion and her Answer), Defendant states that "the debt associated with [her] account number is currently in a pending legal dispute." (see *Defendant's Exhibit "B"). The instant lawsuit was not initiated until January 28, 2025* with the filing of the Summons and Complaint. Defendant did not then and does not now specify which other legal dispute involving Plaintiff might have existed in August of last year. In any event, a review of her supporting documents demonstrates that they are without merit.

14.　　Finally, prior it the commencement of this lawsuit, there is no record of Defendant ever disputing the charges on her Account, which have been documented in her Monthly Statements mailed to her by Plaintiff at the same address as all other correspondence mailed there -- the same address at which she was personally served with the Summons and Complaint. None of these mailings were ever returned to this Firm as being "*undeliverable/moved, no forwarding address*." Under prevailing law, an account holder seeking to contest monthly credit statements and/or bills is statutorily required to do so under the <u>Fair</u>

Credit Billing Act ("FCBA"), 15 U.S.C. Sec. 1666 and Reg. Z, Sub. 226-13 (b)(1) within 60 days of receipt of the disputed Monthly Statement. Here, there is no record confirming that Defendant did so prior to this lawsuit.

### *Plaintiff Has Not Violated the Fair Credit Reporting Act*

15.     Here, Defendant has offered speculation, a caution in the form of an Affirmative Defense, an unsupported opinion regarding this matter, which she characterizes this lawsuit as "this unresolved billing dispute." It is nothing of the sort. Defendant is being sued for monies owed by her to Plaintiff. She was served with a Summons and Complaint and, upon information and belief, did not raise any legal arguments, legitimate or otherwise, until being so served. She filed an Answer in which she raises Affirmative Defenses in addition to her instant Motion to Compel Arbitration. She does not challenge this Court's Jurisdiction. Consequently, this Defense is nothing more than a boilerplate statement and should not, respectfully, be given any weight whatsoever by this Court.

### Conclusion

16.     For the reasons set forth, Plaintiff respectfully submits that Defendant's Motion to Compel Arbitration should be denied and that the Affirmative Defenses contained in her Answer are both factually and legally without merit.

**WHEREFORE**, Plaintiff hereby opposes to Defendant's motion to compel arbitration.

I affirm this 24th day of April, 2025, under the penalties of perjury of the laws of the State of New York, which may include a fine or imprisonment, that the foregoing is true, and that I understand that this document will be filed in an action in a Court of Law.


Dated:    Woodbury, New York
          April 24, 2025

                              Respectfully submitted,

                              *[signature: Michael J. Brennan]*
                              SELIP & STYLIANOU, LLP
                              By: Michael J Brennan, Esq.
                              Attorneys for Plaintiff
                              199 Crossways Park Drive,
                              Woodbury, New York 11797
                              (516) 364-6006

TO:     Sandra D. Bell
        29 S Aspen Rd
        Middletown, NY 10940

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

Index No. EF000950-2025

S&S File: N496538

-------------------------------------------------------------------X

CAPITAL ONE, N.A.

PLAINTIFF,

AGAINST  -

**AFFIRMATION IN
OPPOSITION**

SANDRA D BELL

DEFENDANT.

-------------------------------------------------------------------X

Michael J Brennan, Esq., hereby subscribes and affirms that:

1.    I am an associate attorney with Selip & Stylianou, LLP, attorneys for Capital One,
N.A. (hereafter, "Plaintiff"), and as such, am fully familiar with the facts and circumstances of
this matter, based upon my review of the file maintained by this office, which contents I believe
to be true and accurate.

2.    This Affirmation and annexed exhibits are submitted in Opposition to the Motion
of SANDRA D BELL (hereinafter, "Defendant") returnable April 25, 2025 which seeks to
Compel Arbitration pursuant to the Federal Arbitration Act (9 U.S.C. Sec. 1 -16), Stay the Case
while Arbitration is conducted, and provide any further relief the Court find appropriate. Further,
accompanying Defendant's Motion is her Answer to the Summons, in which she raises what she
asserts to be Affirmative Defenses.

## PROCEDURAL HISTORY

3.      This action was commenced by Plaintiff in an effort to collect monies owed by Defendant as further detailed in the Complaint.  Copies of the Summons and Complaint are annexed hereto as **Exhibit "A"**.

4.      Service was effectuated upon Defendant in strict compliance with CPLR 308(2) on March 11, 2025 at her then address of record, namely, 29 S. Aspen Rd., Middletown, N.Y. 10940. A copy of the Affidavit of Service is annexed hereto as **Exhibit "B"**.  Pursuant to CPLR 3215(g), copies of the Summons and Complaint were also mailed to Defendant at the aforementioned address on March 14, 2025. Issue was joined upon the filing of Defendant`s Answer on March 31, 2025.

5.      Accompanying Defendant`s instant Motion to Compel Arbitration is her Answer to the Complaint  in which she repeats her Demand to Compel Arbitration as well as raises what she asserts to be Affirmative Defenses. Plaintiff respectfully submits that Defendant`s Motion be denied and that the Defenses that she raises in her Answer are without merit.


## Legal Arguments

### *Defendant`s Motion to Compel Arbitration and Stay the Proceedings Is Without Merit*

6.      To begin with, Plaintiff refers the Court to the annexed Capital One Customer Agreement, annexed hereto as **Exhibit "C,"** which confirms that Defendant`s Account is not subject to an Arbitration Clause. Consequently, Defendant`s Motion to Compel Arbitration and Stay Arbitration must be denied.

### *The Affirmative Defenses in Her Accompanying Answer Are Also Without Merit*

7.    Defendant has failed to set forth any meritorious Affirmative Defenses in her Answer.

8.    Defendant begins her Answer with a General Denial and then specifically denies the following:  that a valid or enforceable contract exists between the parties; that Plaintiff has Standing to bring this Action; that Plaintiff is authorized to collect any debt related to her Account; and, that she owes any amount to Plaintiff. She also maintains that Plaintiff has not sufficiently documented its lawful ownership of her Account or her debts and charges.

9.    Initially, Defendant asserts that Selip and Stylianou appears to be a  party to this lawsuit as "the third party debt collector," thus creating an ambiguity requiring intervention of an arbitrator. This, however, is nothing more than an allegation unsupported by any credible, factual or documentary evidence. It is well settled that defenses, which merely plead conclusions of law without supporting facts are insufficient, and are therefore fatally deficient. Bentivegna v. Mennen Oil Co., Inc., 126 A.D.2d 506, 510 N.Y.S.2d 626 (2nd Dept. 1986).  Mere conclusions, expressions of hope, or unsubstantiated allegations or assertions are insufficient to defeat a motion for summary judgment. Gilbert Frank Corp. v. Federal Ins. Co., 70 N.Y.2d 966, 525 N.Y.S.2d 793 (1988).The fact is that the parties to this Action are unambiguously stated in the Summons and Complaint (**Exhibit "A"**), in Plaintiff's instant Affirmation, and in Defendant's own Motion and Answer. Moreover, Selip and Stylianou, L.L.P. is not a "third party debt collector." Rather, it is Plaintiff's Attorney of Record in this matter -- nothing more, nothing less.

10.    As to Defendant's denial of Plaintiff's Standing in this Action, this Defense is unsupported in fact or in law. First of all, Plaintiff is the original creditor as defined in

N.Y.C.C.R. Sec. 105(q-1) and, therefore, owns her Account. Moreover, "[T]he plaintiff [has] established, prima facie, its standing to prosecute this action. Due proof was adduced that the plaintiff was [and still is] the original lender." Bank of Am., N.A. v O'Donnell, 47 Misc. 3d 1210(A), 2015 N.Y. Misc. LEXIS 1185, 2015 NY Slip Op 50545(U), 16 N.Y.S.3d 791 (Sup. Ct., N.Y Co. 2015). Next, Plaintiff is a National Association Bank; and, pursuant to the National Bank Act (NBA), 12 U. S. C. §1 et seq. as well as regulations promulgated thereunder by the Office of the Comptroller of the Currency (see §§24, 93a, 371[a]), is authorized to conduct business in the State of New York. Plaintiff is also a party to the Agreement (**Exhibit "C"**) along with Defendant and therefore has Standing. Annexed hereto are copies of correspondence mailed to Defendant by Plaintiff - Monthly Statements, the Last Activity Statement, the Default Confirmation Statement, the Charge-Off Statement, (**Exhibit "D"**) and the Pre-lawsuit ("*Dunning*") letter (**Exhibit "E"**) as further documentation of Defendant's ownership of Defendant's Account. Thus, "[T]he plaintiff [has] established, prima facie, its standing to prosecute this action. Due proof was adduced that the plaintiff was [and still is] the original lender." Bank of Am., N.A. v O'Donnell, 47 Misc. 3d 1210(A), 2015 N.Y. Misc. LEXIS 1185, 2015 NY Slip Op 50545(U), 16 N.Y.S.3d 791 (Sup. Ct., N.Y Co. 2015). As such, this Defense must fail.

### *Neither the Truth in Lending Act or the Fair Credit Billing Act was Violated*

11.     Defendant argues that the filing of this lawsuit without having properly resolved a billing dispute is a violation of both the Truth in Lending Act 15 U.S.C. Sec. 1666 and the Fair Credit Billing Act, ("particularly under Reg Z,") 12 C.F.R .Sec. 1026.13. In doing so, she relies upon correspondence addressed to this Firm, dated January 24, 2025, seeking Debt Validation Pursuant to the Fair Debt Collection Practices Act (see *Defendant's Exhibit A*). Additionally, she

offers a handwritten form letter addressed to Plaintiff, dated August 30, 2024, requesting that it

cease all collection activities since "the debt associated with [her] account number is currently

pending in a legal dispute." (see *Defendant`s Exhibit B*).

12.     Regarding Defendant`s January 24, 2025 correspondence addressed to this Firm,

upon information and belief, this Firm was never in receipt of it. In fact, this Firm`s first notice

of Defendant`s Dispute of her Debt and Request for Validation occurred on April 8, 2025 when

it received Defendant`s instant Motion to Compel and her Answer, the same date, incidentally,

that Defendant filed these documents with this Court (see *Defendant`s Exhibit A*).

13.     More notably, in her August 30, 2024 correspondence addressed to Plaintiff

(which again, did not come to this Firm`s attention until April 8 of this year upon the receipt of

her Motion and her Answer), Defendant states that "the debt associated with [her] account

number is currently in a pending legal dispute." (see *Defendant's Exhibit "B"*). *The instant*

*lawsuit was not initiated until January 28, 2025* with the filing of the Summons and Complaint.

Defendant did not then and does not now specify which other legal dispute involving Plaintiff

might have existed in August of last year. In any event, a review of her supporting documents

demonstrates that they are without merit.

14.     Finally, prior it the commencement of this lawsuit, there is no record of

Defendant ever disputing the charges on her Account, which have been documented in her

Monthly Statements mailed to her by Plaintiff at the same address as all other correspondence

mailed there -- the same address at which she was personally served with the Summons and

Complaint. None of these mailings were ever returned to this Firm as being

"*undeliverable/moved, no forwarding address*." Under prevailing law, an account holder seeking

to contest monthly credit statements and/or bills is statutorily required to do so under the <u>Fair</u>

Credit Billing Act ("FCBA"), 15 U.S.C. Sec. 1666 and Reg. Z, Sub. 226-13 (b)(1) within 60

days of receipt of the disputed Monthly Statement. Here, there is no record confirming that

Defendant did so prior to this lawsuit.

### *Plaintiff Has Not Violated the Fair Credit Reporting Act*

15.    Here, Defendant has offered speculation, a caution in the form of an Affirmative

Defense, an unsupported opinion regarding this matter, which she characterizes this lawsuit as

"this unresolved billing dispute." It is nothing of the sort. Defendant is being sued for monies

owed by her to Plaintiff. She was served with a Summons and Complaint and, upon information

and belief, did not raise any legal arguments, legitimate or otherwise, until being so served. She

filed an Answer in which she raises Affirmative Defenses in addition to her instant Motion to

Compel Arbitration. She does not challenge this Court's Jurisdiction. Consequently, this Defense

is nothing more than a boilerplate statement and should not, respectfully, be given any weight

whatsoever by this Court.

### Conclusion

16.    For the reasons set forth, Plaintiff respectfully submits that Defendant's Motion to

Compel Arbitration should be denied and that the Affirmative Defenses contained in her Answer

are both factually and legally without merit.

**WHEREFORE**, Plaintiff hereby opposes to Defendant's motion to compel arbitration.

I affirm this 24th day of April, 2025, under the penalties of perjury of the laws of the State of New York, which may include a fine or imprisonment, that the foregoing is true, and that I understand that this document will be filed in an action in a Court of Law.

Dated:    Woodbury, New York
          April 24, 2025

                    Respectfully submitted,

                    SELIP & STYLIANOU, LLP
                    By: Michael J Brennan, Esq.
                    Attorneys for Plaintiff
                    199 Crossways Park Drive,
                    Woodbury, New York 11797
                    (516) 364-6006

TO:    Sandra D. Bell
       29 S Aspen Rd
       Middletown, NY 10940



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

---------------------------------------------

CAPITAL ONE, N.A.

PLAINTIFF,

-AGAINST-

SANDRA D BELL

DEFENDANT.

---------------------------------------------

Plaintiff designates ORANGE County as the place of trial; the defendant resides in ORANGE County

**INDEX NUMBER:**
PURCHASE DATE:
S&S FILE NO. N496538

**SUMMONS**
Plaintiff's address: 4851 COX ROAD, GLEN ALLEN, VA 23060

The Basis of the Venue is Defendant's Residence

*CONSUMER CREDIT TRANSACTION*

*TO THE ABOVE NAMED DEFENDANT(S):*

      **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the state of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint, together with the costs of this action.

Dated: January 27, 2025

Selip & Stylianou, LLP
Attorneys for plaintiff
P.O. Box 9004, 199 Crossways Park Dr., Woodbury, NY 11797-9004
(516) 364-6006 ext. 8991; (866) 848-8975 ext. 8991; TTY/TRS: (516) 422-8500
Refer to S&S File No. N496538

Defendant to be served: SANDRA D BELL, 29 S ASPEN RD, MIDDLETOWN, NY 10940

**This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.**

YOURS, ETC.
Selip & Stylianou, LLP

By: _____
ANDREW ROBERTSON ESQ.



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
----------------------------------------------------

CAPITAL ONE, N.A.

                PLAINTIFF,

-AGAINST-

SANDRA D BELL

                DEFENDANT.
----------------------------------------------------

INDEX NUMBER:
S&S FILE NO. N496538

**COMPLAINT**

Plaintiff, by its attorneys, complaining of the Defendant(s), respectfully alleges that:

1. Plaintiff is a national banking association organized pursuant to federal law.

2. Upon information and belief, the Defendant(s) resides or has an office in the venue in which this action is brought, or the Defendant(s) transacted business within the venue in which this action is brought, either in person or through an agent, and the instant cause of action arose out of said transaction.

3. Based upon a reasonable inquiry, the Statute of Limitations for the causes of action asserted herein has not expired.

4. Upon information and belief based upon information received from the United States Department of Defense, Manpower Defense Data Center (a copy of which is attached), the Defendant is not an active member of any branch of the United States Military.

### FACTS

5. A revolving credit account (hereafter the "Account") was opened in Defendant's name, subject to the terms and conditions provided, or made available in electronic format, to the Defendant (the "Agreement"). A copy of the charge-off statement is attached hereto. Plaintiff is the original creditor (as defined in NY CPLR § 105(q-1)) and owner of the Account.

6. Defendant used the Account and incurred a balance. The last four digits of the Account number on the most recent monthly statement recording a purchase transaction, last payment, or balance transfer (the "Last Activity Statement") are 1836, and the balance owed as set forth in the Last Activity Statement was $2,867.48.

7. Defendant breached the terms of the Agreement by failing to make the agreed-upon payments when due.

8. Demand for payment of the Account was made on Defendant, but Defendant failed to make all the required payments. The Defendant's last payment was made on or about June 13, 2024 in the amount of $50.00.

9.  As a result of Defendant's default, the Plaintiff closed the Account and subsequently charged it off on November 19, 2024 in the amount of $3,334.75, as reflected in the attached statement, which was mailed or otherwise made available to the Defendant on or about November 19, 2024.

10.  The balance currently due and owing is **$3,334.75**, itemized as follows:

| | |
|---|---|
| Balance due at time of charge-off: | $3,334.75 |
| Plus total amount of interest accrued since charge-off: | $0.00 |
| Plus total amount of non-interest charges or fees since charge-off: | $0.00 |
| Plus total amount of dishonored payments: | $0.00 |
| Less total amount of payments and/or credits since charge-off: | $0.00 |

## AS AND FOR A FIRST CAUSE OF ACTION

11.  Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if more fully set forth herein.

12.  As a result of Defendant's breach of the Agreement, and after crediting Defendant for all payments and credits, there is now due and owing by Defendant to Plaintiff the sum of **$3,334.75**, no part of which has been paid despite due demand therefor.

**WHEREFORE**, Plaintiff demands judgment against Defendant(s) in the amount of **$3,334.75** together with disbursements. Plaintiff expressly disclaims any right to attorney fees that it may have.

The undersigned attorney hereby certifies that, to the best of his/her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the presentation of the within complaint and the contentions therein are not frivolous as defined in part 130-1.1(c) of the rules of the Chief Administrator.

Dated: JANUARY 27, 2025

YOURS, ETC.

By: _____
ANDREW ROBERTSON ESQ.
Selip & Stylianou, LLP, Attorneys for Plaintiff
199 Crossways Park Drive, Woodbury, NY 11797-9004
(516) 686-8991; (866) 848-8975 ext. 8991;
S&S File No. N496538

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
--------------------------------------------------------
CAPITAL ONE, N.A.

                **PLAINTIFF,**

      -AGAINST-

                               **INDEX NUMBER:**
SANDRA D BELL                    S&S FILE NO. N496538
              **DEFENDANT.**
--------------------------------------------------------

### NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING

    PLEASE TAKE NOTICE that the matter captioned above, which has been commenced by the filing of the accompanying documents with the County Clerk via the New York State Courts Electronic Filing System ("NYSCEF"), is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b) (3) of that Section.

    Counsel and/or parties must either: 1) immediately record their representation within the e-filed matter on the Consent/Represent page in NYSCEF; or 2) file the Notice of Opt-Out form to claim one of the limited exemptions from mandatory e-filing (see below). Failure to record representation may result in an inability to receive electronic notice of any document filings. Claiming an exemption will require the exempt party to serve and be served with hard copy documents.

    Counsel and unrepresented parties who intend to participate in e-filing must first create a NYSCEF account and obtain a userID and password. For additional information about electronic filing, and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov; mailing address: 60 Centre Street, New York, New York 10007).

Exemptions from mandatory e-filing (Section 202.5-bb(e)) are limited to:
    1) attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the operational knowledge to comply with e-filing requirements; and
    2) parties who expect to represent themselves and who choose not to participate in e-filing. (Such parties are encouraged to visit www.nycourthelp.gov or contact the Help Center in the court where the action is pending.)

**Dated: January 27, 2025**

                              _____
                    Selip & Stylianou, LLP
                    By: ANDREW ROBERTSON ESQ., Attorney for Plaintiff
                    P.O. Box 9004, 199 Crossways Park Drive, Woodbury, NY 11797-9004
                    (516) 686-8991; (800) 293-6006 ext. 8991;

To: SANDRA D BELL, 29 S ASPEN RD, MIDDLETOWN, NY 10940

NYSCEF DOC. NO. 22    RECEIVED NYSCEF: 01/28/2025

**Capital**One    QUICKSILVER
ONE

QuicksilverO. Card | World Elite Mastercard ending in 1836
Oct 20, 2024 - Nov 18, 2024  | 30 days in Billing Cycle

## Payment Information

| | |
|---|---|
| Payment Due Date | For online and phone payments, the deadline is 8pm ET. |
| **PAST DUE** | |
| New Balance | Minimum Payment Due |
| **$3,334.75** | **$3,334.75** |

## Account Summary

| | |
|---|---|
| Previous Balance | $3,255.01 |
| Payments | $0.00 |
| Other Credits | $0.00 |
| Transactions | + $0.00 |
| Cash Advances | + $0.00 |
| Fees Charged | + $0.00 |
| Interest Charged | + $79.74 |
| **New Balance** | **= $3,334.75** |
| Available Credit (as of Nov 18, 2024) | N/A |

## Account Notifications

(i)  New York residents may contact the New York State Department of Financial Services to obtain a comparative listing of credit card rates, fees, and grace periods. Contact the New York State Department of Financial Services: 1-877-226-5697 or www.dfs.ny.gov.

---

Pay or manage your account at <u>capitalone.com</u>          Customer Service: 800-227-4825          See reverse for Important Information

**Capital**One

SANDRA D BELL
29 S ASPEN RD
MIDDLETOWN, NY 10940-6825

Payment Due Date: **Past Due**          Account ending in 1836

| New Balance | Minimum Payment Due | Amount Enclosed | |
|---|---|---|---|
| $3,334.75 | $3,334.75 | $ _____ | Capital One
PO Box 981600
Boston, MA 02298-1600-00 |

Please send us this portion of your statement and only one check (or money order) payable to Capital One to ensure your payment is processed promptly. Allow at least seven business days for delivery.



1        1836 18 3334750050000000000

NYSCEF DOC. NO.                                                    RECEIVED NYSCEF: 01/28/202

**How can I Avoid Paying Interest Charges?** If you ... your New Balance in full by the due date each month, we will not charge interest on new trai... ...ons that post to the purchase balance. If you have been paying in full without Interest Charges, but fail to pay your next New Balance in full, we will charge interest on the unpaid balance. Interest Charges on Cash Advances and Special Transfers start on the transaction date. Promotional offers may allow you to pay less than the total New Balance and avoid paying interest on new transactions that post to your purchase balance. See the front of your statement for additional information.

**How is the Interest Charge Determined?** Interest Charges accrue from the date of the transaction, date the transaction is processed or the first day of the Billing Cycle. Interest accrues daily on every unpaid amount until it is paid in full. Interest accrued during a Billing Cycle posts to your account at the end of the Billing cycle and appears on your next statement. You may owe Interest Charges even if you pay the entire New Balance one month, but did not do so the prior month. Once you start accruing Interest Charges, you generally must pay your New Balance in full two consecutive Billing Cycles before Interest Charges stop being posted to your Statement. Interest Charges are added to the corresponding segment of your account.

**Do you assess a Minimum Interest Charge?** We may assess a minimum Interest Charge of $0.00 for each Billing Cycle if your account is subject to an Interest Charge.

**How do you Calculate the Interest Charge?** We use a method called Average Daily Balance (including new transactions).

1. First, for each segment we take the beginning balance each day and add in new transactions and the periodic Interest Charge on the previous day's balance. Then we subtract any payments and credits for that segment as of that day. The result is the daily balance for each segment. However, if your previous statement balance was zero or a credit amount, new transactions which post to your purchase segment are not added to the daily balance.

2. Next, for each segment, we add the daily balances together and divide the sum by the number of days in the Billing Cycle. The result is the Average Daily Balance for each segment.

3. At the end of each Billing Cycle, we multiply your Average Daily Balance for each segment by the daily periodic rate (APR divided by 365) for that segment, and then we multiply the result by the number of days in the Billing Cycle. We add these Interest Charges for all segments together. The result is your total Interest Charge for the Billing Cycle.

The Average Daily Balance is referred to as the Balance Subject to Interest Rate in the Interest Charge Calculation section of this Statement.

NOTE: Due to rounding or a minimum Interest Charge, this calculation may vary slightly from the Interest Charge actually assessed.

**How can I Avoid Membership Fees?** If a Renewal Notice is printed on this statement, you may avoid paying an annual membership Fee by contacting Customer Service fewer than 40 days after the annual membership Fee was assessed to request that we close your account. To avoid paying a monthly membership Fee, close your account and we will stop assessing your monthly membership Fee.

**How can I Close My Account?** You can contact Customer Service anytime to request that we close your account.

**How do you Process ...ments?** When you make a payment, you authorize us to initiate an ACH or electronic payment that will be debited from your bank account or other related account. When you provide a check or check information to make a payment, you authorize us to use information from the check to make a one-time ACH or other electronic transfer from your bank account. We may also process it as a check transaction. Funds may be withdrawn from your bank account as soon as the same day we process your payment.

**How do you Apply My Payment?** We generally apply payments up to your Minimum Payment first to the balance with the lowest APR (including 0% APR), and then to balances with higher APRs. We apply any part of your payment exceeding your Minimum Payment to the balance with the highest APR, and then to balances with lower APRs.

Billing Rights Summary (Does not Apply to Small Business Accounts)
**What To Do If You Think You Find A Mistake On Your Statement:** If you think there is an error on your statement, write to us at:
P.O. Box 30285, Salt Lake City, UT 84130-0285.

In your letter, give us the following information:
• Account information: Your name and account number.
• Dollar amount: The dollar amount of the suspected error.
• Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake. You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing. You may call us or notify us electronically, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question. We will notify you in writing within 30 days of our receipt of your letter. While we investigate whether or not there has been an error, the following are true:
• We cannot try to collect the amount in question, or report you as delinquent on that amount. The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
• While you do not have to pay the amount in question until we send you a notice about the outcome of our investigation, you are responsible for the remainder of your balance.
• We can apply any unpaid amount against your credit limit. Within 90 days of our receipt of your letter, we will send you a written notice explaining either that we corrected the error (to appear on your next statement) or the reasons we believe the bill is correct.

**Your Rights If You Are Dissatisfied With Your Purchase:** If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase. To use this right, the following must be true:
1) You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify; and
2) You must not yet have fully paid for the purchase.
If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at: P.O. Box 30285, Salt Lake City, UT 84130-0285. While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay we may report you as delinquent.

© 2023 Capital One. Capital One is a federally registered service mark

ETC-08 07/13/2023

 Pay online at capitalone.com

 Pay using the Capital One mobile app

 Customer Service 800-227-4825

## Changing your mailing address?

You can change your address by signing into your account online or by calling Customer Service.

Any written request on this form will not be honored.

**How do I Make Payments?** You may make your payment in several ways:
1. Online Banking by logging into your account;
2. Capital One Mobile Banking app for approved electronic devices;
3. Calling the telephone number listed on the front of this statement and providing the required payment information;
4. Sending mail payments to the address on the front of this statement with the payment coupon or your account information.

**When will you Credit My Payment?**
♦ For mobile, online or over the phone, as of the business day we receive it, as long as it is made by 8 p.m. ET.
♦ For mail, as of the business day we receive it, as long as it is received by 5 p.m. local time at our processing center. You must send the bottom portion of this statement and your check to the payment address on the front of this statement. Please allow at least seven (7) business days for mail delivery. Mailed payments received by us at any other location or payments in any other form may not be credited as of the day we receive them.

**Capital One** | QUICKSILVER ONE

QuicksilverO. Card | World Elite Mastercard ending in 1836
Oct 20, 2024 - Nov 18, 2024 | 30 days in Billing Cycle

## Transactions

Visit capitalone.com to see detailed transactions.

### SANDRA D BELL #1836: Payments, Credits and Adjustments

| Trans Date | Post Date | Description | Amount |
|---|---|---|---|

### SANDRA D BELL #1836: Transactions

| Trans Date | Post Date | Description | Amount |
|---|---|---|---|

### Fees

| Trans Date | Post Date | Description | Amount |
|---|---|---|---|
| **Total Fees for This Period** | | | **$0.00** |

### Interest Charged

| | Amount |
|---|---|
| Interest Charge on Purchases | $79.74 |
| Interest Charge on Cash Advances | $0.00 |
| Interest Charge on Other Balances | $0.00 |
| **Total Interest for This Period** | **$79.74** |

### Totals Year-to-Date

| | |
|---|---|
| Total Fees charged | $268.00 |
| Total Interest charged | $804.14 |

## Interest Charge Calculation

Your Annual Percentage Rate (APR) is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charged |
|---|---|---|---|
| Purchases | 29.46% P | $3,293.39 | $79.74 |
| Cash Advances | 29.46% P | $0.00 | $0.00 |

**Variable APRs:** If you have a letter code displayed next to any of the above APRs, this means they are variable APRs. They may increase or decrease based on one of the following indices (reported in The Wall Street Journal) as described below.

| Code next to your APR(s) | How do we calculate your APR(s)? | When your APR(s) will change |
|---|---|---|
| P<br>L | Prime Rate + margin<br>3 month LIBOR + margin | The first day of the Billing Cycles that end in Jan., April, July and Oct. |
| D<br>F | Prime Rate + margin<br>1 month LIBOR + margin | The first day of each Billing Cycle |



**Protect yourself from scams.**
When dealing with uninvited contacts from people, businesses, or social networking sites, always use caution.

Scan this QR Code with your phone's camera to learn more or visit
**www.capitalone.com/stopscams**

530486-EN

NYSCEF DOC. NO.    Results as of Jan-28-2025 06:04:03 AM EST



Department of Defense Manpower Data Center                    SCRA 5.23

## Status Report
## Pursuant to Servicemembers Civil Relief Act

SSN:              ▮▮▮▮▮8681
Birth Date:       ▮▮▮▮▮▮▮
Last Name:        BELL
First Name:       SANDRA
Middle Name:      D
Status As Of:     Jan-28-2025
Certificate ID:   B0KV7LG3V2K61XM

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Sam Yousefzadeh*

Sam Yousefzadeh, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Alexandria, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.



Personal Service

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF ORANGE



*1732357*

## AFFIRMATION OF SERVICE

Index no : **EF000950-2025**
Date of Purchase: **01/28/2025**
Office No: N496538

| Plaintiff(s): | **CAPITAL ONE, N.A.** |
|---|---|
| Defendant(s): | **SANDRA D BELL** |

STATE OF NEW YORK COUNTY OF ORANGE , ss.:
I (Felicia Powell) affirm I am over the age of 18 and reside in New York State

On **03/11/2025** at **7:05 PM**, I served the within **SUMMONS AND COMPLAINT; EXHIBIT(S); NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING** on **SANDRA D BELL** at **29 S ASPEN RD , MIDDLETOWN, NY 10940** in the manner indicated below:

By delivering and leaving a true copy or copies of the aforementioned documents with said **Defendant(s)** personally. At the time of such service I asked the person spoken to if they are the same person mentioned and described in the aforementioned documents as **SANDRA D BELL** the **Defendant(s)** in this action and received an affirmative reply.

The perceived description of the **Defendant(s)**, or other person served on behalf of the **Defendant(s)** is as follows:

| Sex/Gender | Color of skin/race | Color of hair | Age(Approx) | Height(Approx) | Weight(Approx) |
|---|---|---|---|---|---|
| **Female** | **Black** | **Black** | **55-65** | **5ft 4- 5ft 8** | **161-200 lbs** |
| Other Features: | | | | | |

Pursuant to CPLR 3215 (g)3, on **03/14/2025** I mailed a copy of the Summons by first-class mail to the defendants place of residence at **29 S ASPEN RD , MIDDLETOWN, NY 10940** in an envelope bearing the legend "personal and confidential" and not indicating on the outside of the envelope that the communication is from an attorney or concerns an alleged debt.

I affirm this 15th day of March, 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.



Felicia Powell
Proof Technology New York LLC
1800 Gaylord St
Denver, CO 80206

Clerk: Clerk4



# Capital One® Customer Agreement

## Welcome to Capital One

Thank you for opening a credit card account with us. This Customer Agreement including any changes to it ("Agreement") contains the terms of your agreement with Capital One.

## Definitions

The meanings of the terms you see in italics appear in the **Glossary** section at the end of this Agreement.

As used here, "you" and "your" mean each applicant and co-applicant for the *Account*; any person responsible for paying the *Account*; and any person responsible for complying with this Agreement. "We," "us," "our," and "Capital One" mean Capital One, National Association; and its agents, authorized representatives, successors, and assignees.

## Account Documents

The following documents govern your *Account* with us:

(1) this Agreement;
(2) all *Statements*;
(3) any rewards program terms, conditions, and disclosures;
(4) any privacy notices;
(5) your *Card* benefits brochure which describes benefits provided by the *Payment Card Network* for your *Account*;
(6) all disclosures and materials provided to you before or when you opened your *Account*;
(7) any other documents and disclosures relating to your *Account*, including those provided online; and
(8) any future changes we make to any of the above.

Please read these carefully and keep them for future reference.

## New Offers

In the future, we may provide you with new offers that we think may interest you. The terms of these offers may differ from the standard terms on your *Account*. This Agreement will still apply.

## Account Information

We need information about you to manage your *Account*. This includes:

(1) your legal name;
(2) a valid U.S. mailing address and residential address (if different);
(3) your date of birth;
(4) your Social Security number or other government identification number;
(5) your telephone number(s); and
(6) your employment and income information.

You must tell us when this information changes. We may ask you for additional documents to verify any changes.

We may restrict or close your *Account* if we cannot verify your information, or if you do not provide it as requested.

## Your Revolving Credit Line and Spending

We will tell you your initial revolving credit line when you open your *Account*. We may increase or decrease your revolving credit line at any time without prior notice to you, unless notice is required by law, and we may limit or take away the credit available for *Cash Advances*. You can find your current revolving credit line on your *Statement*. We may not authorize transactions in excess of your revolving credit line. We may consider each transaction that may cause you to exceed your revolving credit line based on several factors, including your performance on this *Account* and other credit accounts you have with us and your performance with other creditors. If we do authorize transactions in excess of your revolving credit line, they will be subject to this Agreement. They will not result in an increase of your revolving credit line.

## Using Your Account

(1) This Agreement applies whether or not you use your *Card* or *Account*. It will continue to apply even after your *Account* is closed, as long as you have a balance.
(2) You must sign the *Card* immediately when you receive it.
(3) You must return the *Card* to us or destroy it if we ask you to.
(4) You must take reasonable steps to prevent the unauthorized use of your *Card*, *Access Checks* and *Account*.
(5) We may decline to authorize a transaction for any reason. This may occur even if the transaction would not cause you to go over your revolving credit line or your *Account* is not in default.
(6) We are not responsible for any losses you incur if we do not authorize a transaction.
(7) We are not responsible for any losses you incur if anyone refuses to accept your *Card* for any reason.
(8) Unless we tell you otherwise, we will bill each transaction to the applicable *Segment* of your *Account*. We will apply it against your available credit for that *Segment*.
(9) You may obtain *Cash Advances* and *Transfers* as permitted for your *Account*. You may not use these to pay any amount you owe us or any other company in the Capital One organization.
(10) You must not use, or try to use, the *Card* for any illegal activity. You are responsible for any charges if you do.
(11) We are not liable for any losses that may result when our services are unavailable due to reasons beyond our control.

## Rewards

Your *Account* may provide you with the opportunity to earn rewards. If it does, we will separately provide you with information and terms about the rewards.

## Access Checks

We may provide you with *Access Checks*. If we do, we will tell you at the time if we consider them purchases, *Cash Advances* or *Special Transfers*.

Only the person we designate may use *Access Checks*. You may not use them to pay any amount you owe us or any other company in the Capital One organization. We may reject and not pay any *Access Check* if:

(1) your *Account* is past due, charged off, bankrupt, lost/ stolen or closed;
(2) we suspect fraud;
(3) your *Account* is over the revolving credit line; or
(4) the check has expired, is damaged or cannot otherwise be processed.

Our liability if we do not pay an *Access Check* will never be more than (1) your actual damages or (2) the amount of the *Access Check*, whichever is less.

Use of an *Access Check* is not the same as using your *Card*. When you use an *Access Check*, you will have fewer rights to dispute merchant transactions than with uses of your *Card*. Please see the "Billing Rights Summary" on your *Statement* and your other *Truth-in-Lending Disclosures* for more information.

### Stopping Payment of Access Checks

You may request a stop payment on any *Access Check* by contacting Customer Service.

We will have a reasonable amount of time after your stop payment request to research and complete the stop payment. We will not be responsible if we cannot complete the stop payment. Reasons include:

(1) the *Access Check* was already paid;
(2) you do not give us the information we asked for; or
(3) the information you gave us was incorrect.

We do not have to release the stop payment order unless the account holder who made the request asks us to. If we re-credit your *Account* after a valid stop payment order, you give us all of your rights against the payee or other holder of the paid *Access Check*. You also agree to help us in any legal action we may later take against the payee or other holder of the check.

### Using a PIN

We may give you a personal identification number (PIN). For security reasons, you may have to provide the PIN before you are able to use your *Card*.

Keep your PIN secure. Do not write it down, give it to anyone, or keep it with your *Card*. If you lose your *Card* or believe the confidentiality of your PIN has been compromised for any reason, you must contact Customer Service immediately.

### Authorized Users

If you ask us to issue a *Card* to any other person,

they are an *Authorized User*. We may require certain information about them. We may limit their ability to use your *Card*. They may have access to certain information about your *Account*. You will be responsible for their use of the *Account* and anyone else they allow to use your *Account*, even if you did not want, or agree to, that use.

### Removing an Authorized User

If you want to remove an *Authorized User* from your *Account*, you must contact Customer Service and request their removal. You also must immediately destroy all *Cards* in their possession and cancel any arrangements they may have set up on your *Account*. They will be able to use your *Account* until you have notified us that you are removing them from your *Account*. During this time, you will still be responsible for all amounts they charge to your *Account*. You will be responsible even if these amounts do not appear on your *Account* until later.

*Authorized Users* may remove themselves from your *Account* upon request. We reserve the right to remove them from your *Account* for any reason. To remove them from your *Account*, we may close your existing *Account* and issue a new *Card* with a new *Account* number.

### Your Promise to Pay

You promise to pay us all amounts due on your *Account*. This includes amounts where you did not sign a purchase slip or other documents for the transaction. We will treat transactions made without presenting your actual *Card* (such as for mail, telephone, Internet, or mobile device purchases) the same as if you used the *Card* in person. If you let someone else use your *Card*, you are responsible for all transactions that person makes.

### Statements

We will generally send or make available to you one *Statement* for all *Cards* on your *Account* at the end of each *Billing Cycle*. Under certain circumstances, the law may not require us to send or make available to you a *Statement*, or may prohibit us from doing so.

### Disputed Transactions

You must inspect each *Statement* you receive. Tell us about any errors or questions you have, as described in the "Billing Rights Summary" on your *Statement* and other *Truth-in-Lending Disclosures*. If you do not notify us of an error, we will assume that all information on the *Statement* is correct.

If we credit your *Account* for all or part of a disputed transaction, you give us all of your rights against others regarding that transaction. You will also:

(1) give us any information about the disputed transaction, if we ask;
(2) not pursue any claim or reimbursement of the transaction amount from the merchant or any other person; and
(3) help us get reimbursement from others.

## No Warranties

We are not responsible for any claim you may have regarding the purchase of goods or services made with your *Card* beyond your rights described in the "Billing Rights Summary" on your *Statement.*

## Lost or Stolen Card

If your *Card* is lost or stolen or if you think someone else may be using your *Card* or *Account* number without your permission, you must contact Customer Service immediately. You will not be responsible for transactions on your *Account* that we find are unauthorized.

If we reimburse you for unauthorized transactions, you will help us investigate, pursue and get reimbursement from the wrongdoer. Your help includes giving us documents in a form that we request.

## Interest Charges and Fees

We will charge *Interest Charges* and *Fees* to your *Account* as disclosed on your *Statement* and other *Truth-in-Lending Disclosures.* In general, *Interest Charges* begin to accrue from the day a transaction occurs. However, we will not charge you interest on any new transactions posted to the purchase *Segment* of your *Account* if you paid the total balance across all *Segments* of your *Account* in full by the due date on your *Statement* each month. From time to time, we may give you offers that allow you to pay less than the total balance and avoid *Interest Charges* on new purchase *Segment* transactions. If we do, we will provide details in the specific offer.

We will generally treat *Fees* as purchase transactions unless otherwise specified below. These *Fees* apply to your *Account* only if your *Truth-in-Lending Disclosures* provide for them. We may increase your *Interest Charges* and *Fees* as described in the **Changes to Your Agreement** section or in your *Truth-in-Lending Disclosures.*

## Membership Fee

If your *Account* has a membership *Fee,* we may charge the first membership *Fee* either on the day you activate your *Card* or on the day when you use your *Account,* whichever occurs first. If your *Account* terms include a $0 introductory *Fee,* we may charge the first *Fee* when the introductory period ends. If it is an annual *Fee,* we may then charge it approximately once per year. If it is a monthly *Fee,* we may charge it each *Billing Cycle.*

## Late Payment Fee

We may charge you this *Fee* if we do not receive your payment as instructed on your *Statement* by the payment due date.

## Returned Payment Fee

We may charge you this *Fee* each time your financial institution for any reason rejects a payment you make to us.

## Stop Payment Fee

We may charge you this *Fee* each time you ask us to (1) stop payment on an *Access Check* or (2) renew an existing stop payment order.

## Cash Advance Fee

We may charge you this *Fee* each time you take out a *Cash Advance.* We will treat this *Fee* as a *Cash Advance* transaction.

## Transfer Fee

We may charge you this *Fee* each time you make a *Transfer.* We will charge the *Fee* to the same *Segment* where we post the *Transfer.*

## Transactions Made in Foreign Currencies

If you make a transaction in a foreign currency, the *Payment Card Network* will convert it into a U.S. dollar amount. *The Payment Card Network* will use its own currency conversion procedures. The conversion rate in effect on the processing date may differ from the rate in effect on the transaction date that appears on your *Statement.* We do not adjust the currency exchange rate or charge any currency conversion *Fees.*

## Minimum Payment

You must pay us at least the minimum payment amount by the payment due date. Your *Statement* will tell you:

(1) the minimum payment due,
(2) your new balance,
(3) the payment due date, and
(4) an explanation of when the payment must reach us for us to consider it received as of that date.

Returns and other credits to your *Account* will reduce your *Account* balance, but they will not change your minimum payment amount.

In addition to the minimum payment, you may pay all or part of the total balance on your *Account.* But, you must still pay at least the minimum payment amount each month, even if you paid more than the minimum payment due on the previous *Statement.* We will continue to charge *Interest Charges* during *Billing Cycles* when you carry a balance regardless of whether your *Statement* includes a minimum payment that is due. If your *Account* is 180 days past due, is part of a bankruptcy proceeding or is otherwise charged off, the total balance is immediately due and payable.

## Making Payments

Your payment must be made in U.S. dollars from a U.S. deposit account in a form acceptable to us. We do not accept cash payments through the mail. You may not make payments with funds from your *Account* or any other credit account with us or any other company in the Capital One organization. You must send mailed payments to us as instructed on your *Statement,* unless we tell you otherwise.

3

## Other Payment Services

We may make services available that allow you to make faster or recurring payments online or by telephone. We will describe the terms for using these services and any applicable *Fee* before you use them. You do not have to use these other payment services.

We are not responsible if your financial institution rejects a payment made using our payment services.

If you ask someone else to make a payment for you, we may provide that person with limited *Account* information necessary to set up and process that payment. We may also refuse to accept that payment. If we do accept it, you will be responsible for that payment even if a financial institution rejects it.

## Payment Processing

We may accept and process payments without losing any of our rights. We may delay the availability of credit until we confirm that your payment has cleared. This may happen even if we credit your payment to your *Account*. We may resubmit and collect returned payments electronically. If necessary, we may adjust your *Account* to correct errors, process returned and reversed payments, and handle similar issues.

When you send us an *Item* as payment, you authorize us to make a one-time electronic fund transfer from your deposit account. You also authorize us to process the payment as an *Item*. We may withdraw the funds from your deposit account as early as the same day we receive your payment. You will not receive your *Item* back from your bank. We will provide additional information about this process on your *Statement*.

We may use the information from an *Item* to create an electronic image. We may collect and return the image electronically. This electronic image may also be converted to a substitute check and may be processed in the same way we would process an *Item*. We will not be responsible if an *Item* you provide has physical features that when imaged result in it not being processed as you intended.

## How We Apply Your Payments

Your *Account* may have *Segments* with different Annual Percentage Rates (APR). For example, purchases may have a lower APR than *Cash Advances*. If your *Account* has *Segment* balances with different APRs, here is how we apply payments in a *Billing Cycle*:

(1) We generally apply credits and payments up to your minimum payment first to the balance with the lowest APR, and then to balances with higher APRs.

(2) We apply any part of your payment exceeding your minimum payment to the balance with the highest APR, and then to balances with lower APRs.

## Items with Restrictive Words, Conditions, or Instructions

You must mail all *Items* bearing restrictive words, conditions, limitations, or special instructions to:

Capital One
PO Box 1330
Charlotte, NC 28201-1330

This includes *Items* marked "Paid in Full" or similar language. This also includes all accompanying communications.

If you make such a payment or send any accompanying communications to any other address, we may reject it and return it to you. We may also accept it and process it without losing any of our rights.

## Credit Balances

We may reject and return any payment that creates or adds to a credit balance on your *Account*. Any credit balance we allow will not be available until we confirm that your payment has cleared. We may reduce the amount of any credit balance by any new charges. You may write to the address provided on your *Statement* or call Customer Service to request a refund of any available credit balance.

## Account Default

You will be in default if:

(1) you do not make any payment when it is due;
(2) any payment you make is rejected, not paid or cannot be processed;
(3) you file or become the subject of a bankruptcy or insolvency proceeding;
(4) you are unable or unwilling to repay your obligations, including upon death or legally declared incapacity;
(5) we determine that you made a false, incomplete or misleading statement to us, or you otherwise tried to defraud us;
(6) you do not comply with any term of this Agreement or any other agreement with us; or
(7) you permanently reside outside the United States.

If you are in default, we may take certain actions with respect to your *Account*. For example, depending on the default, we may take the following actions, without notifying you, unless the law says that we must give you notice:

(1) charge you *Fees*, or change the APRs and *Fees* on your *Account*, if provided in your *Truth-in-Lending Disclosures*;
(2) close or suspend your *Account*;
(3) lower your revolving credit line;
(4) demand that you immediately pay the total balance owing on your *Account*;
(5) continue to charge you *Interest Charges* and *Fees* as long as your balance remains outstanding; and/or
(6) file a lawsuit against you, or pursue another action that is not prohibited by law. If we file a lawsuit, you agree to pay our court costs, expenses and attorney fees, unless the law does not allow us to collect these amounts.

## Communications

You agree that we may communicate with you by mail, telephone, email, fax, prerecorded message, automated voice, text message or other means allowed by law regarding your *Account*.

You agree that we may contact you at any telephone number (including a mobile telephone number that you provide us), and use an automated telephone dialing system or similar device to do so. You agree that we may monitor or record any conversation or other communication with you.

## Credit Reports

We may report information about your *Account* to credit bureaus and others. Late payments, missed payments, or other defaults on your *Account* may be reflected in your credit report. Information we provide may appear on your and the *Authorized Users*' credit reports.

If you believe that we have reported inaccurate information about your *Account* to a credit bureau or other consumer reporting agency, notify us in writing at PO Box 30281, Salt Lake City, UT 84130-0281. When you write, tell us the specific information that you believe is incorrect and why you believe it is incorrect.

We may obtain and use credit, income and other information about you from credit bureaus and others as the law allows.

## Closing or Suspending Your Account

You may contact Customer Service to ask us to close your *Account*.

We may close or suspend your *Account* at any time and for any reason permitted by law, even if you are not in default.

If we close or suspend your *Account* for any reason, you must stop using your *Card*. You must also cancel all billing arrangements set up on the *Account*. If we close or permanently suspend your *Account*, you must return or destroy all *Cards*. You must still pay us all amounts you owe on the *Account*.

## Changes to Your Agreement

At any time, we may add, delete or change any term of this Agreement, unless the law prohibits us from doing so. We will give you notice of any changes as required by law. We may notify you of changes on your *Statement* or in a separate notice. Our notice will tell you when and how the changes will take effect. The notice will describe any rights you have in connection with the changes.

Your variable APRs (if applicable) can go up or down as the index for the rate goes up or down. If we increase your APRs for any other reason, or if we change your *Fees* or other terms of your *Account*, we will notify you as required by law.

## The Law That Applies to Your Agreement

We make decisions to grant credit and issue you a *Card* from our offices in Virginia. This Agreement is governed by applicable federal law and by Virginia law. If any part of this Agreement is unenforceable, the remaining parts will remain in effect.

## Waiver

We will not lose any of our rights if we delay or choose not to take any action for any reason. We may waive our right without notifying you. For example, we may waive your *Interest Charges* or *Fees* without notifying you and without losing our right to charge them in the future.

## Assignment

This Agreement will be binding on, and benefit, any of your and our successors and assigns. You may not sell, assign or transfer your *Account* or this Agreement to someone else without our written permission.

We may sell, assign or transfer your *Account* and this Agreement without your permission and without prior notice to you. Any assignee or assignees will take our place under this Agreement. You must pay them and perform all of your obligations to them and not us. If you pay us after we notify you that we have transferred your *Account* or this Agreement, we can return the payment to you, forward the payment to the assignee, or handle it in another way that is reasonable.

## Glossary

- **"Access Check"** means any check we send to you to access credit from your *Account*. We may also refer to an *Access Check* as a "convenience check" or a "purchase check".

- **"Account"** means your *Card Account* with us.

- **"Authorized User"** means a person who may use the *Card*, but is not responsible for the repayment of the *Account*.

- **"Balance Transfer"** means a *Transfer* posted to the purchase *Segment* of your *Account* unless otherwise described in your *Truth-in-Lending Disclosures*.

- **"Billing Cycle"** means the period of time reflected on a *Statement*. This period may vary in length, but is approximately 30 days. You will have a *Billing Cycle* even if a *Statement* is not required. We will often specify a *Billing Cycle* by the month in which its closing date occurs. For example, a "March *Billing Cycle*" will have a closing date in March. We may also refer to a *Billing Cycle* as a "Billing Period". If your *Account* balance has charged off, we may switch to quarterly *Billing Cycles* for your *Account*.

- **"Card"** means any Capital One credit card associated with your *Account*. This includes all renewals and substitutions. It also means any other access device for your *Account* we give you that allows you to obtain credit, including any *Account* number.

5

- **"Cash Advance"** means a loan in cash or things we consider cash equivalents, including wire transfers, travelers' checks, money orders, foreign currency, lottery tickets, gaming chips, and wagers. We post *Cash Advances* to the *Cash Advance Segment* of your *Account* and not to your purchase *Segment*.

- **"Fees"** means charges imposed on your *Account* not based on the Annual Percentage Rates.

- **"Interest Charges"** means any charges to your *Account* based on the application of Annual Percentage Rates.

- **"Item"** means a check, draft, money order or other negotiable instrument you use to pay your *Account*. This includes any image of these instruments. This does not include an *Access Check*.

- **"Payment Card Network"** means the network provider displayed on your *Card*. This may be Visa Inc., MasterCard International Incorporated, or any other network provider.

- **"Segments"** means the different parts of your *Account* we may establish that are subject to unique APRs, pricing, or other terms. We create these parts of your *Account* for such things as your purchases, *Balance Transfers*, *Cash Advances* and *Special Transfers*. The sum of your *Segment* balances equals your total *Account* balance.

- **"Special Transfer"** means a *Transfer* posted to a *Segment* of your *Account* that is not your purchase *Segment* or *Cash Advance Segment*.

- **"Statement"** means a document showing important *Account* information, including all transactions billed to your *Account* during a *Billing Cycle* and information about what you must pay. We may also refer to your *Statement* as a "Periodic *Statement*" or a "Billing *Statement*".

- **"Transfers"** means amounts transferred from other accounts to this *Account* and includes *Balance Transfers* and *Special Transfers*.

- **"Truth-in-Lending Disclosures"** means disclosures that the federal Truth in Lending Act and Regulation Z require for any *Account*. This includes your application and solicitation disclosures, *Account* opening disclosures, subsequent disclosures, *Statements*, and change in terms notices.



© 2014 Capital One
Capital One is a federally registered service mark.
All rights reserved.